Michael Clough on behalf of Mr. Bezeredi. If it pleases the court, I would like to reserve two minutes of my time, particularly in a case like this. Watch the clock, okay? I will. This is a case that clearly implicates questions involving the fairness and the integrity and potentially, although the case is sealed, so it raises questions about public knowledge or public reputation of the courts. I've been very clear in the briefs not to raise questions. Let me just ask a quick question here. You say the case is sealed? The case, all of the filings in the case have been sealed. I understand that. I don't think I knew that. What we do in an appellate court is a matter of public record, open to the public. The door is open right now. Anybody can walk in who wants, as far as I know. Let me say, I don't think there's anything in this proceeding that would implicate that. There are issues that have to do with things that were documents that were filed relating to al-Qaida. Okay, but you're not contending that however we dispose of this case is under seal, right, in any of the discussions that we have in the courtroom today, or they're not under seal? I'm not saying that. Okay. I'm only alluding to that because it's a matter of public record. You're not saying we have a duty to keep anything in this file secret? I'm not. I'm not. Okay. All right. Everything has been filed a secret. I don't personally think that the government does that. Who filed the secret? When I received the case, it's a very unusual case. It's the only case that I've ever received in which the – everything I file electronically does not have to be submitted to be filed under seal because the whole record is – Okay. So just so we're clear for purposes of the record, whatever the district court did, you agree that our – the record at this point, our proceedings, our disposition, is a matter of public record. Is that correct? I agree to that. The government may have a different position, and I would agree to that. I'll just ask counsel, any disagreement on that? No. Okay. Very good. So for purposes of the record, the record will show that both counsel agree that nothing with respect to this case, insofar as the court of appeals is concerned, or in connection with the record, is under seal. Okay. Go ahead. And I would ask the court staff – Counsel, let me ask you a question about the psychologist report. Yes. You seem to be arguing that the judge erroneously aggravated the sentence, raised the sentence, because of the psychologist report. I could not see that. All I could see when I read the judge's remarks were that he was unimpressed with the psychologist report, so he didn't reduce the sentence because of it. Why am I misreading that? Your Honor, in this argument, I would not like to focus on the psychologist report because I think that it had an impact on the judge's decision, but, quite frankly, I'm – I wouldn't argue that. So you're waiving that? I wouldn't – You're waiving that? I wouldn't say I'm waiving it. I think – and this is part of the – what I think is important about this case is that there are two errors that I think were clear errors, and one of the things I want to talk a little bit about, and I assume the Court will talk to me about – ask me about, is plain error. There are two different errors that I think are the core errors that this Court could remand on the basis of. The one has to do with the admission of what was a clearly erroneous letter. You mean the victim statement? The victim statement letter, which is significant. If there were a number of victim letters and there were other ones that went specifically to the judge's clear concern about the devastating consequences on individual victims, then I would say, of course, this is not a consequential letter. But this was the only letter that was – that addressed the psychological consequences. And if you look at the judge's ruling at the very end, he talks about how moved he was by the psychological consequences on the victim. There is no – Why does he need the victim letter for that? What? Old people get a whole lot or all of their money stolen or even a significant amount. A judge might very well think they'd be upset and depressed about it without anyone saying so in a letter. Well, I think that a judge might. Gosh, it just – it seems like an ordinary inference just from the fact of they're old, somebody steals their money. Two things. One, I think that there are lots of things that could be ordinary inferences. But when we're talking specifically about – and the government repeatedly used the word devastating consequences. Well, there was evidence outside the letter that showed that, wasn't there? Not in terms of psychological consequences. In fact, there was not a – But it's like Judge Kleinfeld said. I mean, the judge doesn't have to be adult about this. I mean, he's a human being. You see all these elderly people that have lost money and so on. Can't the judge, in evaluating the sentencing issues here within guidelines, interestingly enough, and yet even if that letter didn't exist, it's almost like it's surplusage, isn't it? I don't think it's surplusage. And I think that the best evidence that it's not surplusage is the way the government briefed the case. If this was surplusage, the government wouldn't have placed such emphasis on that letter. Well, they're just saying – the government just saying, hey, it's perfectly all right for the district judge to take this into consideration. I don't care how they briefed it. I mean, it's the judge. I agree. And I think that the judge, in the judge's decision, and to go to the question within guidelines, I mean, obviously what we're talking about here is the fact that a judge had the discretion to go below guidelines. He could have considered the 3553A factors and gone below. And what in this case, even though the judge didn't have to delineate those, what in the 3553A factors would give you any hope whatsoever that with your client there would have been a below-guideline sentence? That's really a chutzpah, isn't it? Well, there are two questions here. One, once again, we're talking procedural fairness, not substantive fairness. I understand. Sure. On the procedural fairness issue, I think that Judge Feist absolutely erred in discounting the sentencing disparity issue. I mean, he clearly says on the record that the only question for him was whether or not there was sentencing disparity in his courtroom. That is clearly an incorrect statement of the law. In Gaul, there's actually a reference, and you remember the case. I don't understand how you get to first base on that. The chart doesn't show enough about the particular cases to show whether there was any disparity that mattered. And under Treadwell, it wouldn't matter anyway. I'd like you to just review with me whether I'm correct on the guidelines. They went up 18 because the amount of money was 4.7 million, up 4 because there were over 4,000 victims and that there were vulnerable victims. So they went up 2. And he was clearly an organizer or leader, so they went up 4. And then the offense was partially outside the United States, and they went up 2. Now, all of those are legitimate, accurate. And I have to be very clear, and I think that a clear reading of my briefing will reveal this. There are issues that I think can't be raised in this proceeding because they're not in the record having to do with counsel's representation and matters that are in the record that may or may not be there. That's not that the ---- Wait a minute. Are you going to argue an IAC claim? Is that what you're saying, even though there's nothing alleged to that effect? Well, I can't argue an IAC claim in this proceeding, and I'm not ---- I can only argue what's in the record. Okay, I thought you were talking about something counsel did or didn't do. I am talking about that. So are we talking about that if there's no claim for IAC? To give you an example, I think that one indication of an issue in which there is an IAC claim, in which I am limited in my ability to raise the issue here, has to do with the question of the loss amount, which was obviously a major question. I think that the Court, in abundance of caution, should have allowed the cross-examination of Ms. France from the FTC. I have not ---- Doesn't the district court ---- Don't we judge that by an abuse of discretion standard in terms of evidence? And, Your Honor, in my reply brief, I essentially said exactly that. So there's no abuse. Judge Feist didn't abuse discretion on that. And the reason that I can't argue an abuse of discretion is because counsel, as the Court pointed out, failed to identify the specific reasons why there was a need for cross-examination of that witness. Now, obviously, that's why I've deferred it. But I'd like to go back to first point, the fact that I simply think this letter in the context of these proceedings is so substantial. It's not ---- the government could have simply presented the record. It could have simply said, look, we have the ---- exactly as the way, Your Honors, have respectfully said. We have numerous victims. We can make these inferences. Government chose not to do that. In the Court's explanation of its decision, it went to great lengths to talk about the impact, not just inference of possible impact. It went to talk about the devastating psychological consequences. Well, doesn't the PSR have all of that? No. I mean, we're talking about all these elderly victims and the thousands lost their life savings. All of that's in there, isn't it? No. Your Honor, I would respectfully suggest what you just said is exactly what the problem  I don't understand why that particular letter is so important. Even without any letters, the facts would be pretty obvious. And then you've got all these other letters. You've got the one from the woman whose 88-year-old husband was wasting all his money on sweepstakes tickets because he was sure he was going to win. And you've got the woman whose mother is dead and she died broke, she says, because too many people like John Raymond Bezzeretti ponder out of what little she had. Her dream was to provide something for her grandchildren. She was the perfect victim. Gee, these letters, they hardly needed to be written. That's when telemarketing fraud is used against old people. It's always that way. Your Honor, to take, as an example, the letter of the woman writing about her husband. She also said in the letter that her husband never sent more than $20. And, you know, what we're talking about here is not whether or not ---- Richard went without heat in his house for about a month in the winter of 2003 because he didn't have the money to replace the furnace? They're just all over the place. I think that letter was from Richard. That was what? The victim Richard letter. It's ---- our names are Elsa Blanked Out, Shirley Blanked Out, Sparkalene, and Brenda Blanked Out. We are Richard Blanked Out's daughters. Exactly. That is the letter. If I read that letter, if a judge hears that letter, it has a tremendous impact on them. Well, you know, counsel, I find it difficult if there have been no letters, if I was just given the cold facts of telemarketing, loss, 4,000-plus people, I'd throw the book at the guy. And I don't think that I'm an unusually vindictive judge if you look at my record. Your Honor, I'm very well of your reputation. I know that that's not the fact. That ought to end the case for you right there. Yes. I think that, as I've said, the issue here is really procedural. I have not argued substantive fairness. I think there will be, as I've alluded to, other issues to be raised, but they don't. But, counsel, with respect, our case law, the case law of the Supreme Court has been really clear that when it comes to sentencing, there's enormous discretion given to the district judges, particularly when considering the 3553A factors. As Judge Fletcher has indicated, if I were the district judge, you'd be looking at substantial enhancement, not something within guidelines. I think you've really dodged a really big sentence here. I mean, he was extraordinarily fortunate that Judge Fease was as careful and capable in handling it as he was, but I don't see any procedural. Where's the case law to back up your point? Well, the two procedural errors I cite, too, I think are both clear. Failure to apply the standard by clearly stating the wrong standard on sentencing disparities and, secondly, reliance on clearly erroneous facts. If you think this woman was lying or mistaken about the crook stealing $200,000 from her dad, why don't you subpoena her and examine her under oath at the sentencing? That could have been done in there. That goes back to other questions that I've already alluded to in terms of questions that are best raised on a 2255 as opposed to this. I'd like to reserve, it says I have 18 seconds. 18 minutes. Request the deference of a minute. Okay. Okay. Let's hear from the government. May it please the Court, my name is Ellen Lindsey. I'm an assistant United States attorney in Los Angeles, and I was trial counsel. Your Honors, this has been a very difficult matter for me because despite what my mother says, I'm not perfect, and I made a mistake in this case, and nobody likes to make a mistake. I want to assure Your Honors that had I looked and seen that this man was in our records as sending $500, I certainly would have noted it. When I did look on appeal, I definitely went to my supervisors and said, you know, what do you think, should we just say send it back? But, and I think Your Honors have had to. Are you talking about the letter that we've been discussing on the $200,000? Yes. You're saying the government knew it was wrong but kept that from the judge? Oh, no, no, no, Your Honor. No, no, no. What I'm saying. That's a mistake. I mean, I thought what you were saying was we knew we should have sent a correction. I told my superiors we should have sent a correction, but we didn't. No, no, no. This was on appeal. As soon as I realized it, that was when it was on appeal, and I put the footnote in the brief to disclose it, that Richard apparently. I certainly did not know below. I guess you wouldn't really know whether her dad sent $200,000. It's just that you can't prove that her dad sent more than $20,000 or $500,000 or something. Your Honor, I have about 15 years of experience focusing specifically on mass marketing fraud, almost always against the elderly, and unfortunately, as Your Honor has recognized, a letter like Richard's daughter sent is not unusual at all. Unfortunately, I've seen the kind of horrible, awful devastation that this kind of crime. Focus on this case. Yes. So in the case, we do not know whether Richard actually sent the $200,000 to the defendant or not. And one of the reasons is that we very rarely have full records in these cases from Canada. We never know if we get everything. We may have everything in this case, but also often telemarketers will, if they get a particularly good fish, they will divert the funds separately. And in this case, the defendant personally admitted that he was the cause of the harm to the victims in the victim impact letters. It was not just Mr. Castillo, the lawyer, but also the defendant himself wrote a letter to the court stating, I've read the victim impact letters and it's my misrepresentations that caused this, and I'm very, very sorry for the harm that I caused. As a practical matter, I mean, we appreciate your acknowledging an error. I guess we just have to weigh whether this is, in effect, a structural matter or whether it's kind of whether harmless error can apply. Can you elucidate, is there any case law that would suggest whether harmless error applies here? Well, Your Honor, I think it would be actually plain error. Plain error because they didn't raise it below, right? Because the defendant did not raise it. And using the plain error standard, one of the, of course, factors is that it would have made a difference ultimately. And in this particular case, were we to send this back, I suppose Judge Feist could re-sentence the guy to much more than the guideline, right, if he wanted to. Well, I was really shocked that he didn't at least go to the high end in a case like this. It's so egregious, this particular case. And, Your Honor, Judge Flesher, you were discussing the guideline calculation. And, in fact, his guidelines today would have been two levels higher because he only received a four-level bump for 50 or more victims, where there were 4,500 in this case. At least now you get a six-level bump if it's more than 250. So that was certainly an aggravating factor. I think Your Honors are absolutely correct that Judge Feist, as everybody else knows, that, as I've said, this crime has incredibly devastating consequences on the elderly. It's no secret. The letter was simply an illustration. Can I refocus here, though, Counsel? Sure. My question to you was not whether there was plain error, but whether harmless error applies. In other words, let's assume for a minute that it's plain error. In this case, given the facts of this case, is the third prong of the plain error standard satisfied here, basically? In other words, if we find that the letter made no difference, are we permitted under the case law and the regulations to simply say, this is harmless error, there's no problem? Absolutely. And what case or site cases would you cite? I don't think that I can give you a case site. Okay. However, I would point out the facts of what Judge Feist gave a very long explanation of why he was imposing the sentence that he was imposing. And he definitely did talk about the victims and what they suffered. But this Court has recognized the particular harm to elderly victims of telemarketing fraud. Counsel, are you talking generally about telemarketing fraud or are you talking about this case? I keep getting concerned because it's plainly wrong to sentence somebody on the basis of how bad the crime is in other cases. It's just flat out a wrong thing to do, morally and legally, to sentence somebody more harshly than his own conduct would merit, because similar conduct in other cases causes terrible harms. And you keep making the argument in exactly those wrong terms. And I don't know why. I apologize, Your Honor. I certainly don't mean to. I was maybe inarticulately referring to when Your Honor ---- We know telemarketing fraud against the elderly is a terrible thing. Yes. I just want to know about this case. All right. In this case, the probation office stated that this case had devastating consequences to the victims. There were many victim impact letters. Unfortunately, I didn't have as many victim impact letters as usual, and I think this is an aggravating factor because the defendant preyed on people who were so elderly that most of them had died. A bunch of them are dead. We should pick that up. Yes. As a matter of fact, we almost weren't able to get a guilty plea because so many of the victims in the indictment were already dead, and we had to prove to the defendant that there was at least one who was still compass mentis to testify. This is what happens in these cases from Canada. Even with him conceding extradition, he waited four years to do it. So the case was old by the time you got here, and these victims did not live to see justice. Judge Feist specifically related that there was a very large amount of loss. There was a huge number of victims that are not taken into account by the guidelines, that many of the victims in this case died before they saw justice done. The court adopted the reasoning of the probation officer, whose testimony was that whose recommendation letter came out before my position so wouldn't have been affected by the letter. And in that recommendation letter that the probation officer wrote mentioned the devastating consequences of the crime to the victims in this case. So the court adopted that reasoning. The probation officer said the loss was exorbitant and the toll on the victims was immeasurable. The judge also did, as far as 3553A factors, discuss the fact that in cases like this where you have a well-educated defendant with all the chances to do right, he chose to do wrong, and so there was particular callousness of the offense in this case, and it made this defendant a particular risk of recidivism, that he was clever and well-educated and clearly knew better. The judge was focused on the fact that this defendant targeted very vulnerable and elderly victims. So in other words, there were many of them. I remember from another telemarketing case that I had, when the telemarketers buy the names and phone numbers, there's a higher price for people who have Alzheimer's disease. Is that? That's from another case I had. I don't know if there's anything about that in this case. Well, there's no evidence of that here, Your Honor, but the evidence was that he went after people who were extremely elderly. So we're not talking just maybe an older demographic. This was a specific targeting. Over what age? I don't think we have a specific age. It was just our, and it's in the record, that the people were on the higher end of elderly, and I think that's reflected in the fact that so many of them passed away in the time that it took to actually see justice done. I do think, Your Honor, that the court can take into consideration the well-known fact that this crime has a devastating effect. I don't think it's improper for the court to consider the generalized knowledge that we all have, that this court has recognized in the Scribner case, et cetera, that a crime like this does have horrifying and devastating consequences. This is why many of the enhancements were enacted to specifically target this kind of crime. I don't think it's improper for the court to take that into consideration. And in that sense, I think I was most clear. Do you even need the letters? I mean, it seems to me, take all the money that a 25-year-old has or that a 35-year-old has, and they may have enough working life years left to make it up. Take all the money a 75-year-old has, and they probably can't get a job and make it back. I think that's correct, Your Honor.  Do they even matter? You don't need the letters, but it's the victim's right to be heard. In other words, I don't think you need the letters in order for this judge to have reached the sentence. He went on for pages about the various different reasons and why he was giving the sentence that he did. And I can't see how the letter would have made a difference in that, especially given that it was a mid-range guideline sentence that didn't have certain enhancements in it that it certainly could have had, the extreme number of victims being one of them. Was there any evidence here about who he bought the names from and how he got the names and phone numbers? I'm thinking if you bought them from an old-age home, that would be kind of interesting. No evidence. You know, I'm trying to think. There may have been. It wasn't necessarily relevant. It was a given that the defendant was targeting the extremely elderly in the case. Targeting is a metaphor that doesn't tell me anything about how he bought the names, and I just asked you if there was evidence of that, and I think you said no. No. Okay. No. I believe that my feeling about it was best expressed, and maybe I did go off on the psychologist, but after dealing with this kind of case for 15 years and seeing what happens to the victims in this case and others, and certainly Judge Feist has that experience, too. He knows what happens in these cases, and this case in particular, it's simply not plain error for the Court to have considered that letter. And I thank you, Your Honor. I think we have your argument. Any other questions by my colleagues? You have a de minimis amount of time, but you can use it, counsel. I'll be very brief. I think the government's argument has made clear. My client was sentenced not because of the specific harms that were proven in the case of the generalized harms. I would also just direct the Court's attention to, I believe it's page 34 of the record. It was page 36 of the transcript where the judge says, as the victim letters themselves indicate, the victim suffered severe emotional distress, humiliation, loss of self-esteem, and even physical debilitation. There is evidence of devastating loss. I do not in any way diminish the consequences of this crime, but that statement in the record is only based on that single letter. And I think that, along with the fact of the failure to consider sentencing disparities, which indicated that other people sentenced for similar crimes had received substantially lower sentences, those two things, I think, established procedural error and that, therefore, justify remanding this to Judge Feist, where he will have the opportunity to determine whether or not he would give the same sentence or worse sentence. Thank you. Thank you, Mr. Clough. The argument in United States v. Bezzariti has concluded. The matter is submitted, and the Court stands in recess for the day. All rise. The Court stands in recess.
judges: Fletcher, Kleinfeld, Smith